## Sam Trimble v. The State.

### No. 49.  Decided December 15, 1909.

**1.—Assault to Murder—Evidence—Other Transaction.**

Where, upon trial for assault with intent to murder, the evidence showed the killing of another person during the same transaction at which defendant shot at the injured party, for which he was indicted, there was no error in admitting testimony of the killing of said third party, as the same was part and parcel of the same transaction.

**2.—Same—Charge of Court—Intent to Alarm—Trespass.**

Upon trial for assault to murder, where the evidence showed that the alleged injured party and others went upon the premises of the defendant at night to frighten him, and that defendant fired to scare them away, but killed one of the parties and wounded another, for which latter act he was indicted, the court erred in charging the jury that if defendant unlawfully, and with intent to alarm, shot at the injured party, and accidentally or unintentionally shot him, to find the defendant guilty of simple assault; to constitute an assault by alarming a person the thing done must first be unlawful, and if the defendant simply intended to scare away the trespassers, without injuring them, he could not be guilty of unlawful intent to alarm.

Appeal from the District Court of Coleman.  Tried below before the Hon. J. W. Goodwin.

Appeal from a conviction of aggravated assault; penalty, a fine of $25.

The opinion states the case.

*J. C. Randolph* and *Woodward & Baker* and *Snodgrass & Dibrell,* for appellant.—On question of admitting testimony as to killing of third party: Terry v. State, 45 Texas Crim. Rep., 264, 76 S. W. Rep., 928; Walker v. State, 44 Texas Crim. Rep., 569, 72 S. W. Rep., 997.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This is an appeal from a conviction for aggravated assault with a fine of $25.  The appellant was indicted for assault to murder but was found guilty of aggravated assault.  From an inspection of the record it will be seen that the following facts are disclosed:  That on the night of the 31st of December, 1906, and about 12 o'clock at night, Roger Burgess, Gus Havens and Claude Havens, in company with several other boys, together with one Pettis Bird, went to the home of appellant, who lived some four miles east of the town of Coleman for the purpose of playing a prank upon appellant.  The witnesses for the State all agree that they had rigged up a dummy that looked like a man, which was some six feet high, and that they went into the yard of the appellant, placed the dummy about half way between the gate and the door of his residence, and some thirty feet from the door,

and after placing the dummy in this position they concealed themselves to the right and the left of the dummy, the house fronting north, and some of the boys stepped to the east side of the dummy and some to the west. Burgess and Bird were to the right of the dummy some six or eight feet behind a rose bush. Some noise was made to attract appellant. The dog began to bark, the appellant got up and came out on the gallery, the moon was shining and he asked, "Who is that?" This he repeated some two or three times and received no response. He then said: "I will go in the house and get my gun and then see whether you will answer or not." After being gone a moment or two he returned on the gallery with the gun and again called to know who was there and immediately fired his gun, first to the right and then left of the dummy, both barrels in rapid succession. All the boys ran off. Bird, who was behind the rose bush with Burgess, or close to Burgess, by one of these shots was killed. The boys ran off and someone of them suggested that Bird had been shot, and they returned. Burgess, who was a nephew of the appellant, says he called to him several times, "Uncle Sam! Uncle Sam!" when the gun was fired again and Burgess was shot, and for the shooting of Burgess this prosecution was instituted. The appellant took the stand and testified substantially, as all the other witnesses testified, up to the time when the boys returned and the appellant shot again. Appellant states that when the boys returned he heard the noise and did not know that anybody had been hurt, and he, about that time, had discovered that the boys were playing a prank on him, or thought so, and fired simply to alarm them; that he had no intention to hit anyone, and that when he shot the first time he did not see anyone, nor did he see anyone the second time; that he fired and that his whole purpose was to pay back the boys for the prank they were playing on him. It further appears from the testimony that no friction or ill-feeling existed between the appellant and the boys who were injured on that night.

1. Complaint is made that the court below erred in permitting the State to prove the killing of Bird on that night. We can not see how it was possible to intelligently make out the case on the part of the State without the disclosure of all the facts and circumstances surrounding the transaction. It was a part and parcel of the transaction. The shooting of Bird was the reason for the boys returning. Bird was shot in the first melee, and we think it was beneficial to the defendant to introduce this testimony because it is evident from the facts disclosed that the defendant could not have known and did not know where the parties were concealed or whether there were any parties there at all or not. We, therefore, hold that this testimony was admissible as being part of the explanation of what transpired at the time, and to have separated this

from the main transaction would but leave the story half told. We, therefore, hold that the court below did not err in admitting this testimony.

2. Complaint is made of the following charge given by the court: "If from the evidence in this case you believe beyond a reasonable doubt that the defendant in Coleman County, Texas, on or about the time alleged in the indictment, did unlawfully and with intent to alarm, shoot at or toward Roger Burgess, and accidentally or unintentionally shoot him, then you will find defendant guilty of a simple assault and battery and assess his punishment as hereinbefore directed." This charge was excepted to by appellant and a bill of exceptions preserved at the trial. To this bill the court below added the following qualification: "Approved with this explanation: If the charge is error, it was invited, defendant having requested and the court having given the following charge: 'You are instructed in this case that if you believe from the evidence that defendant at the time of his alleged assault on Roger Burgess only intended to alarm, or if you have a reasonable doubt of such being his intention, you should give him the benefit of the doubt and acquit him of aggravated assault.'" An inspection of the record shows that this charge was given. We are of opinion that the question of alarm was not in this case and that the charge of the court as given was more strongly against the appellant than the charge requested by the appellant. The language, in substance, of the charge given is if appellant shot at the witness Burgess with intent to alarm and unintentionally and accidentally shot him, he would be guilty of a simple assault. We do not so understand the law, and we are inclined to think that this placed a burden upon the appellant more onerous than the law imposes and that the special charge requested was wholly different from the charge given. It would be inconsistent to say that if a man shot at another that the shooting could be with the intent to alarm. In one sense of the word, the prosecuting witness and the boys that accompanied him, were trespassers upon the appellant's premises. Their purpose in going upon the premises was to alarm the appellant. Then, it strikes us, that he would have the right to use such means as would alarm these boys and cause them to desist in playing their pranks upon him, and that the case would have gone to the jury on the plain issue of assault or no assault, without reference to the question of whether he sought to alarm or not. Now, article 592 of the Penal Code, in speaking of "coupled with an ability to commit," states it is meant: 1. "That the person making the assault must be in such a position that, if not prevented, he may inflict a battery upon the person assailed. That he must be within such distance of the person so assailed as to make it within his power to commit the battery by the use of the means with which he attempts it. 3. It follows that one who

is, at the time of making an attempt to commit a battery, under such restraint as to deprive him of the power to act, or who is at so great a distance from the person assailed as that he can not reach his person by the use of the means with which he makes the attempt, is not guilty of an assault.  But the use of any dangerous weapon, or the semblance thereof, in an angry or threatening manner, with intent to alarm another, and under circumstances calculated to effect that object, comes within the meaning of an assault."  Then in order to constitute an assault by alarming a person, the thing done must first be unlawful, must be done in an angry or a threatening manner and with intent to alarm.  There may be an intent to alarm and not be unlawful.  A party may be depredating upon my premises; he may be a trespasser; I do not desire to inflict upon him any personal injury, but I desire to act in such manner as would alarm him and cause him to leave my premises and desist from his mischief.  Would an act of mine, though intended to alarm, if there is no intent to injure, be criminal if injury results from an accident or an unintentional act?  We think not.  The appellant would have a right to compel parties to leave his premises, and the means that he uses to accomplish that purpose, if not intended to bring about injury, can not become an assault.  Hence, we do not think the charge as given by the court was the law of the case and that the case should be reversed.  In the case of White v. State, 29 Texas Crim. App., 530, this court says: "To constitute an assault when a dangerous weapon with intent to alarm, the use of the weapon must be unlawful which necessarily signifies aggressiveness and offensiveness.  If the weapon is used in lawful self-defense, its use does not constitute an assault.  The facts must show a present unlawful purpose to alarm another."

There are numerous other questions presented in the record that we deem it unnecessary to discuss.  For the error above indicated the case is reversed and the cause is remanded.

*Reversed and remanded.*