BEN BORDERS v. THE STATE.

No. 4385. Decided March 14, 1917.

**Aggravated Assault—Intent to Alarm—Charge of Court.**

Where, upon trial of aggravated assault and a conviction of simple assault, the evidence showed on the part of the defense that defendant simply got out his knife, about ten steps from the party who claimed to have been assaulted, and held it down by his side simply to be used in self-defense, the court should have submitted a requested charge that, to constitute an assault by alarming a person, the thing done must first be unlawful and must be done in an angry or threatening manner and with intent to alarm, and a failure to do so is reversible error. Following Trimble v. State, 57 Texas Crim. Rep., 439. Distinguishing Brister v. State, 40 Texas Crim. Rep., 505.

Appeal from the County Court of Ellis. Tried below before the Hon. W. M. Tidwell.

Appeal from a conviction of simple assault; penalty, a fine of five dollars.

The opinion states the case.

*Clyde F. Winn,* for appellant.—On question of using dangerous weapon with intent to alarm: Smith v. State, 51 Texas Crim. Rep., 645, 104 S. W. Rep., 899; White v. State, 29 Texas Crim. App., 530, 16 S. W. Rep., 340; Ponton v. State, 35 Texas Crim. Rep., 597, 34 S. W. Rep., 950; White v. State, 68 S. W. Rep., 689; Trimble v. State, 57 Texas Crim. Rep., 439, 125 S. W. Rep., 40.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of use of dangerous weapon or semblance thereof: Kief v. State, 10 Texas Crim. App., 286; King v. State, 61 Texas Crim. Rep., 427; Yelton v. State, 75 Texas Crim. Rep., 38, 170 S. W. Rep., 318; Smith v. State, 51 Texas Crim. Rep., 645; Smith v. State, 57

S. W. Rep., 949; Werner v. State, 16 S. W. Rep., 681; Smith v. State, 62 Texas Crim. Rep., 281; White v. State, 29 Texas Crim. App., 530; Reddick v. State, 47 S. W. Rep., 993; Stanton v. State, 29 id., 476; Mozee v. State, 51 id., 250; Pastrana v. State, 48 Texas Crim. Rep., 224; Reyes v. State, 48 id., 346; Thomas v. State, 60 id., 84, and cases cited in opinion.

DAVIDSON, Presiding Judge.—The complaint and information charge appellant with having committed with a deadly weapon an aggravated assault upon Arthur McDonald.

The court submitted aggravated assault, simple assault, and also gave a definition of assault committed by the use of a dangerous weapon, or the semblance thereof, in an angry or threatening manner, with intent to alarm another, under circumstances calculated to effect that object.

The State's case was made by the testimony of Arthur McDonald and his brother, R. B. McDonald. Their testimony is practically the same. Substantially stating the main facts in regard to the trouble, Arthur McDonald testified that while he and his brother were walking down a street in Waxahachie they met defendant in front of the residence of Mrs. J. B. King, a white woman, and witness asked him if he was going to pay the money that he owed the two brothers, who were in the grocery business; that he said he did not have any money; he had been sick. R. B. McDonald asked him why he did not come around last Saturday as he had promised, and appellant said he did come around. "My brother said, 'No, you didn't,' and Ben said, 'I did.' My brother said, 'Ben, you didn't come around last Saturday and don't you say you did again.' At that time Ben was standing about ten feet from us up the sidewalk, that is, we were between him and the direction of town." The McDonalds turned to walk towards town, and just as they turned they heard appellant say, "I haven't paid you a God damned cent and I am not going to pay you a God damned cent." The McDonalds turned and looked at him, and saw that he had a large knife open in his hand, having it grasped tightly and was "holding his hand kind of out from his side in a rigid manner." That he said, "If you'll come back here I will cut your God damned guts out," at the same time raising his knife in a striking attitude and advanced a step or two in their direction, and that he, Arthur McDonald, said, "Stop, Ben, you stop right there," and he stopped, and his brother said, "Let's get him," but as they did not have anything he said to his brother, "No, we haven't got anything to get him with. Let's go to town and have him arrested." They went to town and reported the matter to the officers. This witness further states they made no attempt to assault appellant.

Mrs. King, who saw the whole matter, testified that she saw the McDonalds talking to appellant on the sidewalk in front of her house. She was standing in the front door of her house at the time and heard

them talking for a few minutes, and appellant started off backing up the street and the two McDonalds followed him for about ten feet. There were about ten feet between appellant and the McDonalds while they were following him. The McDonalds were talking to appellant, but were not making any movement toward him, or making any attempt to strike him, that she could see. The McDonalds then turned to go down the street and as they turned appellant drew a knife out and held it in his hand open, and said he had not paid them anything and was not going to pay them anything. The McDonalds then went towards town. Appellant stood on the sidewalk and watched them until they turned the corner; after they disappeared the witness turned and saw a negro coming down the street toward town; he had not quite reached the sidewalk in front of her premises when she first saw him. At the time defendant pulled his knife he was about ten feet from the McDonalds; he did not throw the knife at them or attempt to strike them with the knife; he was saying something but witness could not understand what it was.

Flowers testified that he was coming down the street and saw defendant some distance down the sidewalk talking to the two McDonalds, who ran a grocery store in Waxahachie. He saw the McDonalds following appellant northeasterly up Kaufman Street. Defendant was backing away from them and they were following along after him. The defendant backed away from them for a distance of about twenty steps. The witness did not understand what was being said but heard the voices. The McDonalds started away from defendant, and after they had gotten away from him about ten steps they turned and started back toward defendant, who ran his hand in his pocket and drew out something; witness thought it was a knife he drew out. At this time the McDonalds were still going toward defendant, but when he drew out this knife they stopped. At the time they stopped they were within ten feet of him. He did not throw the knife at either of them, nor did he strike at them or either of them.

Defendant testified that he met the McDonalds, who asked him if he was going to pay them what he owed them. He said if he owed them anything he would pay it, but that he did not owe them anything; that he had paid his half of the account due at their store; that the other negro who was appellant's partner at the time the account was made owed them the other half, and they would have to look to him for the balance. That both of the McDonalds appeared to be mad, and their manner was threatening. Appellant said he began backing away from them down the street and they followed after him; then they turned to go away, and after they had gone about ten steps from me "I said to them, 'If I did owe you anything I would not pay you now on account of the way you have just treated me.' Then Mr. Arthur McDonald said to his brother, R. B. McDonald, 'Let's get him,' and they turned to walk back to me. I then drew out my knife. They approached until they got within about ten feet of me, and then they

stopped. I did not strike at either of them with the knife. I did not throw the knife at either of them. I was never close enough to either of them after I drew the knife to strike them with it. After I pulled out the knife they were never closer to me than ten feet. When I drew out the knife I held it down by my side. I did not draw it in a striking position, but held it down by my side, with it very slightly drawn back. When I got out the knife they went away and let me alone." Shortly afterwards he was arrested. He testified on cross-examination that he had been arrested charged with using abusive language, but did not have to fight the case; it was dismissed. About the time they dismissed that case this charge of aggravated assault was filed against him in the County Court. This, substantially, is the case as shown by the testimony.

Exception was reserved to that portion of the court's charge wherein the court charged the jury that if they had a reasonable doubt whether it was an aggravated assault or simple assault, they would acquit him of aggravated assault and find him guilty of simple assault, on the ground that there was no evidence to support the charge. Another exception was reserved to that part of the charge wherein the following language was used: "But the use of any dangerous weapon, or the semblance thereof, in any angry or threatening manner, with intent to alarm another, that under circumstances calculated to effect that object, comes within the meaning of an assault." This was based on the ground that there was no evidence justifying or supporting that charge. These exceptions were also carried forward in bills of exception. The court qualifies the exception with reference to the use of a dangerous weapon as follows: "The testimony shows in the latter part of witness Arthur McDonald's testimony that defendant raised the knife in a striking attitude and advanced toward us a step or two, and I said, 'Ben, you stop right there.'" Relying on this testimony of the witness Arthur McDonald, the court thought that the rule laid down in Brister v. State, 40 Texas Crim. Rep., 505, the excerpt complained of was proper. Special instruction was asked, as follows: "To constitute an assault by alarming a person, the thing done must first be unlawful and must be done in an angry or threatening manner and with intent to alarm." This was refused, and timely exception reserved. We think the charge with reference to using a dangerous weapon with intent to alarm was not called for by the evidence, but if so it was by reason of the fact that the information charged appellant with making the assault with a deadly weapon. This was the ground relied upon to constitute aggravated assault. The statute provides that the use of a dangerous weapon, or the semblance thereof, in an angry or threatening manner, with intent to alarm, etc., constitutes an assault, and this has been held to constitute only a simple assault. Under the case of Trimble v. State, 57 Texas Crim. Rep., 439, we are of opinion that the charge complained of should not have been given. This quotation is taken from the Trimble case: "Now, article 592 of the Penal Code,

in speaking of 'coupled with an ability to commit,' states it is meant: (1) 'That the person making the assault must be in such a position that, if not prevented, he may inflict a battery upon the person assailed. That he must be within such distance of the person so assailed as to make it within his power to commit the battery by the use of the means with which he attempts it. (3) It follows that one who is, at the time of making an attempt to commit a battery, under such restraint as to deprive him of the power to act, or who is at so great a distance from the person assailed as that he can not reach his person by the use of the means with which he makes the attempt, is not guilty of an assault. But the use of any dangerous weapon, or the semblance thereof, in an angry or threatening manner, with intent to alarm another, and under circumstances calculated to effect that object, comes within the meaning of an assault.' Then in order to constitute an assault by alarming a person, the thing done must first be unlawful, must be done in an angry or a threatening manner and with intent to alarm. There may be an intent to alarm and not be unlawful."

In the case of White v. State, 29 Texas Crim. App., 530, this court said: "To constitute an assault when a dangerous weapon with intent to alarm, the use of the weapon must be unlawful which necessarily signifies aggressiveness and offensiveness. If the weapon is used in lawful self-defense, its use does not constitute an assault. The facts must show a present unlawful purpose to alarm another."

In order to constitute an assault under this phase of the statute, the weapon used must, first, be a dangerous weapon, or the semblance thereof; second, it must be done in an aggressive, not in a defensive way; third, it must be done in an angry or threatening manner, with intent to alarm; fourth, and the circumstances must be such as were calculated to effect that object. P. C., 1012. Unless these concur this phase of the statute is not violated. There was no evidence before the trial court that the weapon used was a dangerous one. It was a knife, and one of the witnesses said a large knife. The weapon must not only be such as denounced by the statute, but this must be shown by the testimony. From this viewpoint the court was in error in charging on the use of a dangerous weapon for the purpose of alarming; but having given this charge, the court should have given appellant's requested instruction. It is unnecessary to discuss this view of the case, unless upon another trial it should be shown by the evidence that the weapon was a dangerous one, or had the semblance of being a dangerous one. As has been stated by this court in the cases above cited, the exhibition of the weapon must be unlawful or aggressive. There is no evidence showing it was a dangerous weapon, and there is evidence showing that the knife was exhibited as a matter of defense against the approach of the adversary. The court below qualifying the bill states he gave the charge under the holding in Brister v. State, 40 Texas Crim. Rep., 505. We are of opinion that case is not in point on either proposition. An inspection of that case shows that the de-

fendant approached his adversary rapidly and in a threatening way, and when within a few feet of him drew and presented his pistol at the party. It is unnecessary to discuss that case as being in point here. The Brister case was properly decided.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, Judge.—In my opinion the exhibition of the pocketknife was in fact and in law the exhibition of a dangerous weapon. However, I concur in the reversal on account of the refusal of said special charge.

MORROW, Judge.—I concur in the reversal of the case on account of the failure to give the special charge discussed, but I express no opinion on the other question involved.